Hello again, your honors. Long time no see. My name is Brenton Aitkenhans from the Law Office of Jury Steering on behalf of Appellant Rogelio Reyes. So again, this is a case that involves officers' reactions to things that they encounter in the course of their investigation and to what extent they're allowed to militarize their response. Now in this case, we have a Monell allegation. Now the court's already found, and it's been undisputed through multiple layers of this litigation, that there was a lack of exigent circumstances. And that would mean that it would be a Fourth Amendment violation to order an appellant out of his home. The question here now is just simply on pleadings. Simply on pleadings. On the facts in the Third Amendment complaint, Third Amended complaint, do they pass muster for purposes of Rule 8? In other words, giving notice to the other side of what they are to defend. And in this case, we've already been up on appeal. The court already ruled in our favor. And they were quite clear about which principle of law is to govern. Now they cited a line of cases, which I refer to here and I refer to in the brief as the Behr allegation line of cases. I'd just like to point out that repeatedly, the argument has been made that this line of cases has been overturned or should be overturned, often by advocates on the other side representing police officers. These cases haven't been overturned by Iqbal and Toomblee and cases of that sort. And in fact, the Supreme Court has cited those cases, the Behr allegation line of cases and cases subsequent to Iqbal. And the truth is this line of cases are not incongruent. They might seem at first blush, but it is the responsibility of the court to harmonize its precedent. And if it is, you know, if you really do find that it conflicts, then of course you could overturn it. But that hasn't happened, you know, repeatedly. So again, I think it was the first time in 2011. And I think it was Starr v. Baca or X. Roe v. Hernandez, one of those two. The appellees asked the court to overturn this Behr allegation line of cases. The court refused to do so. They adopted to, they elected to harmonize them. And I believe their restating of the pleading standard with respect to Monell claims reflects that. Now, the question comes up, what is a Behr allegation? Now, if you take that term just at its face without, you know, considering what the cases say and, you know, the history of Iqbal and things like that, you might think, oh, well, that's just allowing somebody to allege something conclusory or something, just alleging the elements. That's not what that means, though. In the context of a Monell claim, the Behr allegation is just talking about the level of specificity that's required in order to satisfy Rule 8. So it's not a high bar, okay. It's not, you don't have to prove your case in pleading. But, you know, you do have to have some level of specificity that goes beyond just the elements of a Monell claim. And in this case, whether you're talking about the Behr allegation standard or whether you're talking about the Iqbal-Twombly standard or a harmonized version of them, the facts alleged in the Third Amendment complaint easily, easily satisfy those standards. Because we have a defendant who admitted under oath that the challenge practice, ordering people, you know, encroaching upon their cartilage, ordering them out at night without probable cause or extant circumstances, we have sworn testimony from a defendant that that's something that this department does on a regular basis. I believe that's a quote, regular basis, at least five times since he's been there. And you're referring to Officer Henderson's testimony? Yes. But if you look at his testimony, he doesn't mention anything about cartilage. You know, what he's talking about is, you know, having police force outside the home use loudspeakers, maybe a helicopter to come out. So there's no indication that he's referring to police officers entering the cartilage of the home. Well, he is talking about ordering all the people out of the house irrespective of whether they are suspects or not. I believe his testimony is call everybody out, you know, without knowing who everybody is. In other words, it's sort of an indiscriminate way of seizing people, people who might be innocent, people like my client. And that practice, you know, as phrased, I believe it would be unconstitutional if it was the policy of the city. I believe it would be actionable because a lot of people, innocent people, would be caught up with it. And, in fact, if you look at the situation of Obed Reyes, who is not a party in this case. Before we go there, but didn't the earlier panel, our panel, essentially preclude that claim of general use of force? I think you had raised, I don't know if you were counsel in the earlier round, but they made an unlawful arrest claim under U.S. v. Johnson. And I think the Ninth Circuit opinion suggests that, well, Mr. Reyes never saw the officers with a gun. Therefore, that claim is not valid. I don't recall the prior panel precluding anything with respect to alleging any facts regarding Obed Reyes. He is not a party. This is just another example. Not to Obed Reyes, but Mr. Rogelio Reyes, that when Mr. Rogelio Reyes looked out the window, he didn't see any weapons from the police officer. Therefore, he couldn't make the claim that he was forced to come out of his apartment because of force. If I recall, it was a little unclear what the prior panel's sort of ruling on that was, whether it was based on qualified immunity or whether they were saying that they had probable cause. But either way, though, the ruling has been made and it's never been challenged, even though I've personally invited appellees multiple times to address it. It's never been challenged that there's a lack of exigent circumstances. And so even if it were that case where he sees the officers and supposedly, allegedly, him seeing that it's the officers there means that he's exiting voluntarily, that doesn't mean that there's exigent circumstances there. It still would be unconstitutional if he's exiting in response to an order. And so, anyway. Judge Carter's view was that the, I'll call it the fact pattern, that you're depending upon that the Santa Ana police engage in doesn't help you because that's what happened at the Obed Reyes house and not at your client's apartment. Isn't that the way Judge Carter looked at it? The way that he looked at it is that it's a completely different type of thing because they set off a perimeter and used the bullhorn. I believe those were his ways of distinguishing. I believe that's an immaterial distinction, and my view is that it's actually the same type of thing. You have two households that were ordered out of the house without a probable cause or exigent circumstances, two times on the same night by the same police department. None of these people guilty of the crime, yet they're all ordered out at gunpoint just because of some stolen iPhones. And for the record, they caught the people who did it weeks later with just old-fashioned police work, which, you know, that's great. But the collateral damage in the way these, like I said, two households, two people that were ordered out in the same manner, I believe that what happened with Obed Reyes is that's fair game as far as at least for pleadings. Certainly, we should be able to allege that in order to establish that they're doing this practice on a regular basis. And just to get back to what this case is about, it's about a Monell claim. So how, in other words, pleading facts that show that this is something that they do on a regular basis, that it's the practice of the city. And I really don't understand where this argument comes from that somehow we waive the ability to plead facts regarding Obed Reyes. The court never made a ruling, as far as I know, that we were not allowed to plead facts regarding Obed Reyes. The other side, if they wanted to preclude us from that, it would be a motion to strike would be their vehicle for doing that. They didn't file a motion to strike with regard to pleading facts regarding Obed Reyes. And in my view, it's perfectly relevant to allege that. And that's in addition to what Officer Henderson's testimony said. So whether you're talking about a fair allegation standard, Iqbal Twombly plausibility, or a harmonized version of them, which I believe the court should harmonize them and make it clear that they're harmonized, are the facts alleged in third amendment complaint easily past muster? And I believe that even if it didn't, dismissing it with prejudice, that would definitely be error, because you could certainly cure the complaint. Under circumstances like this, where you have a party who is admitting that it's their practice, what more could you need? So if a party's admitting that they're doing it on a regular basis, that's certainly beyond just a conclusory recitation of the elements. I would think everybody would have to agree with that. So I'd like to reserve the rest of my time for rebuttal, unless you have any questions. I'll hold. Thank you. Good morning, Your Honors. May I please court Christina Talley on behalf of the city of Santa Ana and individual defendants? This is a case, it's a pleading case, and it's a pleading of Monell claim. And the Monell claim is based on an unlawful arrest at a doorway. And I think that that fact, that conclusion of law, is critical to the court's resolution in this case, because this, what is required in order to plead a claim, is they must plausibly allege a pattern of similar unconstitutional conduct in order to state a claim against the city, because this is an allegation, this is a cause of action based on failure to train. And that's where their case breaks down. The facts of what happened at Obed Reyes' home are markedly different from what took place at the appellant's home, which gave rise to the court's conclusion that that was an unlawful arrest. From the outset, the appellant's case against the defendants, based upon what happened at the appellant's residence, was based on the fact that they encroached on the curtilage of his apartment and executed an arrest without a warrant and without exigent circumstances. They argued vehemently in the district court and, again, before this court, that this was a case where Van Eaton didn't apply, and if it did apply, it should be overruled because we have the Ledling case and we have that line of cases that says that if it's a residence, you can't intrude on the curtilage of a home without exigent circumstances or a warrant. The district court agreed. This court found that there was qualified immunity but sent it back on the Monell claim. The district court said that the Monell claim could, in fact, be based on the unlawful arrest and gave them leave to amend, which was the mandate from this court. What happened here, though, is they're basing this pattern of similar unconstitutional conduct on a practice that looks nothing like what happened at the appellant's home. This was a surround and call-out. What happened at Obed Reyes' home was a surround and call-out tactic. It's a common tactic. It's never been held unconstitutional. In fact, courts in the district courts have commented on it as sometimes a less lethal way to approach a suspect. And in that case, following an armed robbery and the officers having information from a ping phone that is at Obed Reyes' home, immediately go to that home and engage in this surround and call-out tactic. To say that there was an unlawful action is absolutely not based on the facts at all. In fact, to call it an unlawful arrest without a probable cause or without a warrant and without exigent circumstances really belies the facts here. They immediately went to Obed Reyes' home as soon as the phone pinged following an armed robbery. But that's really neither here nor there because those facts don't look at all like the facts that happened at the appellant's home. And in order to establish, in order to plead a Monell claim based on failure to train, you have to have similar unconstitutional conduct. If you look at the cases along those lines, if you look at the Connick case, the Supreme Court case, and cases that have applied that principle, it's not enough to say officers went to a home and called people out of a residence and they didn't have a warrant. That doesn't look at all like what happened at the appellant's house. And that's why the pleading fails. And that's why Judge Carter, after two opportunities, said that their complaint failed. There is nothing similar to those two fact patterns. Moreover, again, as I said, not only are they not similar, but the conduct that they're relying on in their complaint has to be unconstitutional. And there's nothing unconstitutional either, generally speaking, about a surrounding call-out practice or, as it was applied in the case of Obed Reyes' home, when they're following a lead on an armed robbery. So that's where the case falls apart. And that's why we believe the district court was correct when he dismissed the claim, and we also believe the district court did not abuse his discretion when he dismissed it without leave to amend. The district court has broad discretion to dismiss a claim without leave to amend after the court has given the appellant an opportunity to amend. In this case, after the remand from the circuit, the district court gave the appellant two opportunities to amend his complaint. And he amended it. He came back the first time, and the district court, Judge Carter said, you can't rely on the facts, the fact pattern at Obed Reyes' home because that was a different fact pattern. That didn't involve the curtilage. That was a different fact pattern. Go back and try again. They came back a second time, realleged almost virtually the same complaint, again relying on the fact pattern at Obed Reyes' home. And that's when the district court said that is not the same fact pattern. The violation in this case was a violation based on intruding on the curtilage of a home without an arrest warrant and without exigent circumstances. The Obed Reyes' home did not involve the curtilage at all. It was a different fact pattern, and the complaint is dismissed, this time without leave to amend. We believe the district court properly exercises discretion, both in dismissing it and dismissing it without leave to amend, and we respectfully request that this court recognize that wide discretion that the district court has and affirm his decision. And I'm happy to answer any questions if the court has any. I'm having some difficulty with the argument that the fact pattern is a different fact pattern at Obed Reyes'. The reality is that for an appellant's case, this is an apartment, and they were there, called him out. Why did the district court just say these are two different fact patterns as opposed to some other analysis about municipal policies and practices? It seems like for an apartment situation, they can't circle the perimeter and call people out. It seems like they did pretty close to what they did in Obed Reyes'. I wanted you to address that concern. Thank you. I appreciate the opportunity to do that. The difference is actually substantial because what they did at the Obed Reyes' home, and keeping in mind this was immediately getting information after the phone pinged following an armed robbery. They went to the home. The purpose of conducting the surrounding and call-out is because they didn't know who was in the home, and the idea was to make sure that they brought everybody out of the house in order to protect anybody who might be in the house who's not involved in the crime. This is a tactic, as I indicated. It's widely done, and it's done for a distinct and different purpose than the purpose for which they went to the appellant's home. In the Obed Reyes' situation, they used this tactic in order to protect everybody that was in the home, to bring out whoever was in the home so they could determine who the suspect was and pursue that particular lead. But the unconstitutional conduct at the appellant's house was going on the curtilage, which the courts have held is part of the house. In other words, they were intruding into the home without a warrant and without exigent circumstances. In the Obed Reyes' situation, the police didn't advance onto the curtilage? No, they stayed. They were not on the property at all. They were outside. They had their cars out. They had the speakers on, but they were on the sidewalk. They didn't go onto the curtilage. They called out for the people to come out of their house, and in fact it wasn't until Obed Reyes was actually on the sidewalk approaching the officers that they approached him. They never intruded on the curtilage, and that's a substantial difference because as Judge Carter pointed out, his ruling was based on the fact that they had intruded on the curtilage of this apartment home. In other words, they were on the front porch, if you will. If this were a single-family home, they were on the front porch, and they were on the front porch without a warrant and, in Judge Carter's opinion, without exigent circumstances. That is a distinct constitutional violation. In Ludland, that court made clear that that was a distinct constitutional violation, and this court determined because of the Van Etten case that the officers were entitled to qualified immunity because there seemed to be some conflict at a minimum between those two cases. But nevertheless, the constitutional violation here was intruding on the curtilage of a home. That didn't happen in the Obed Reyes home. It didn't come close to happening. And so it's not... The courts have held, and when you look at patterns of continuing unconstitutional conduct, that they have to look the same. The Connick Court, in that case, the U.S. Supreme Court said, Brady violations have to look like the same kind of Brady violation. It's not enough to have just a general Brady violation. And there was another, in the Strode case, I believe, and that was a situation where the court held that a suicide in a jail, it's not simply enough that there were previous suicides in a jail. It's the way in which the suicide occurred. In other words, the lack of supervision, what happened,  And similarly, in another district court case, in this circuit, there was a situation where there was excessive force in a jail. And the appellant pled excessive force in three other circumstances. And in that case, the district court said, yes, but those happened on patrol. And you can't say excessive force on patrol looks the same as excessive force in a jail. The fact patterns have to be the same, and they weren't the same in this case. They were markedly different. It wasn't the same type of potential unconstitutional violation that the district court here found happened, which was a Ludland violation encroaching on the curtilage of a home. And for that reason, the district court drew the distinction. Thank you. Thank you. Hello again, Your Honors. So I'd just like to point out this idea that at Obed Reyes' house that they didn't make entry onto the property. It's a constructive entry. This court has held repeatedly. It's a constructive entry when you order people out of their house. And that constructive entry is a patent violation when it is done without probable cause and exigent circumstances. So all these distinctions that I think the court below made about the implements that were used and things like that and little details, I think those are immaterial distinctions, and I think that's putting it on a reasonably high burden. Because we're talking about pleadings here. We're not talking about proving the case. That's an unreasonably high burden that they're putting on us in order to just plead a Mon-El violation. We were never allowed to go to discovery on this and go through all that. I think that for them to ask us to plead all this stuff, in addition to what we already have, I think it's unreasonable. I think that's well outside of Rule 8, and even if it falls wrongly. I think we've more than pled a plausible case that they have a policy of ordering people out of their houses without exigent circumstances or probable cause. Now, whether it's with encroaching on the curtilage, a London violation, which is, by the way, a Jardines violation. The United States Supreme Court said approaching the house, encroaching on the curtilage. It's not just a Ninth Circuit thing. But whether it's done in that way or just ordering them out, I think that's immaterial. The material fact is that they're approaching a house late at night without probable cause or exigent circumstances, and in order to investigate the crime, ordering people out. That is what we pled here. And I think that's why this complaint passes muster or at least ought to be allowed to be amended. Now, I'd like to bring this around to just the rule of mandate. Now, I don't think that there's any way that this Court, without revisiting all the issues that have already been previously decided and which were left undisturbed through multiple layers of the litigation, I don't think there's any way that this Court can say that it was proper to dismiss the complaint on this basis unless you go and say, well, you know, there wasn't probable cause. The truth is the Court hasn't decided. The Court has decided that there is lack of exigent circumstances. That enough right there means it's a Fourth Amendment violation. And the Court did. And the previous panel ruled that the bare allegation that the challenge practice conforms to a municipal policy is sufficient for a Rule 12b-6 motion. Now, the District Court clearly disagreed with that, and I understand Appellee's disagreed with that. That was the ruling of this Court. And it's unfair to us that they are allowed to dispute that in the lower court. And they did dispute that in the lower court, effectively trying to review this Court's ruling in the lower court instead of asking for a writ or asking for rehearing. That's unfair to us because now we're in the position again of having to, you know, re-defend all these issues that we won previously on. And, you know, I thought the issue was decided. And the effect of it is that a normal person is being deprived of their day in court. Somebody who was ordered out at gunpoint, his wife and infant daughter ordered out at gunpoint, no reason, innocent person, they're not even allowed to have their day in court. I think this Court should recognize we're talking about pleadings here. We aren't asking the Court to, you know, rule in our favor on the merits and hold the city and the officers, you know, personally liable. Now, I'm just asking for allow us to go forth on the pleadings so that we can, you know, have our day in court, prove our case. This is the allegation that we made. I believe that it's meritorious. I believe this practice, the challenge practice, ordering people out at gunpoint, you know, without probable cause, direction, circumstances, it's very dangerous. My understanding, officers do it a lot, you know, because it's, you know, in response to various allegations that are made. And a lot of times, people who are innocent, you know, they don't know that, oh, my God, SWAT team is out there. I need to have them watch where my hands are or I'm going to get shot. It's very dangerous. I think this Court needs to, you know, take care when ruling that you aren't cosiding irresponsible behavior by law enforcement that's going to get normal law-abiding people killed or hurt. Thank you, Your Honors. Great. Thank you both for the helpful argument. The case has been submitted.
judges: TASHIMA, LEE, Freudenthal